Golia, J.
(dissenting in part and concurring in part and voting to modify the Criminal Court’s order only to the extent of vacating the dismissal of the informations). I am in agreement with the majority that the lower court, upon granting the suppression motions, exceeded its authority in dismissing the informations. However, I disagree with the characterization of the circumstances surrounding the seizure of the animals as it is presented by my colleagues. They find that the People met “their ‘heavy burden’ ... of establishing that Delaney voluntarily consented to the search” and conclude that Mr. Delaney “was not in custody or under arrest, but, rather, was unfettered on the stoop of his home” (majority op at 52).
Despite this characterization, even a cursory viewing of the videotaped evidence shows that in point of fact defendant Delaney was trapped within the curtilage of his house by a special agent of the law, in full “police-type” uniform with a side arm, who had entered through the gate to his property. The special agent stated that he was there because of a complaint made to the ASPCA concerning the health of defendants’ pets. In addition, there was a film crew from a television series, with cameras continually rolling that were set up just beyond Mr. Delaney’s gate in order to record his every action.
I submit that no reasonable person would have the inclination, when faced with an armed special agent standing at his *55 door and in front of the unblinking gaze of a television camera crew which is recording the event, to not respond to the special agent’s command and simply close the door in his face. This is especially true when, as here, the special agent never told Mr. Delaney that he had the right to refuse the special agent’s request to see the animals or even to speak to him.
It was clear to me from viewing the TV videotape that despite requests, demands and indeed fretful pleadings from Mr. Delaney that he not be videotaped, the TV camera remained on him throughout. The only exception was when the TV camera was recording the personal thoughts of the special agent, who confided that he was getting upset with Mr. Delaney and that based upon Mr. Delaney’s clothes it was obvious to him that Mr. Delaney could hardly take care of himself, so how could he take care of his dogs. Furthermore, the TV camera caught the continued remarks of a woman who stood with the TV camera crew and the special agent as if she belonged there and was part of the action taking place. She continuously made disparaging remarks about Mr. Delaney’s lack of sobriety and made known her suspicions about his sexual orientation, all the while attempting to instigate an arrest.
It is obvious to me, as it apparently was to the hearing court, that the People did not meet their “heavy burden” articulated in People v Gonzalez (39 NY2d 122, 128 [1976]) of establishing that Mr. Delaney voluntarily consented to the search, nor does the majority meet its own even higher burden of showing that the findings of the hearing court were “clearly erroneous,” as required by People v Morales (210 AD2d 173 [1994]).
Indeed, the special agent, when asked, would not let defendant Delaney take the animals to the previously visited veterinary office across the street from his home. To me, such action throughout the encounter evidences the intent that the special agent was determined to arrest Mr. Delaney notwithstanding, and to later arrest Mr. Lewis.
It is for these reasons that I would grant both defendants’ motions to suppress.
Pesce, PJ., and Weston Patterson, J., concur; Golia, J., dissents in part and concurs in part in a separate memorandum.